IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERARD VON HAYNES,    )<br>        Petitioner,  )<br>                     )<br>vs.                     )<br>                     )<br>MICHAEL WENEROWICZ; THE  )<br>ATTORNEY GENERAL OF THE STATE  )<br>OF PENNSYLVANIA,  )<br>        Respondents.  ) | Civil Action No. 13-1137<br>Chief Judge Joy Flowers Conti/<br>Chief Magistrate Judge Maureen P. Kelly |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 3, and its amendments (collectively, the "Petition") be dismissed and that a Certificate of Appealability be denied.

## II. REPORT

Gerard Von Haynes ("Petitioner") was convicted of, *inter alia*, robbery and second degree murder in connection with his shooting of a victim in the course of a theft. Petitioner confessed to the crimes during a police interrogation. After unsuccessfully seeking to have his confession suppressed, the confession was admitted at his trial and the jury convicted Petitioner. He has now filed the Petition to challenge his state court convictions. Petitioner raises four issues in the instant proceeding. Because none of the issues merit the grant of federal habeas relief, the Petition should be denied. Because jurists of reason would not find denial of the Petition debatable, a Certificate of Appealability should also be denied.

## A. Factual Background

The Pennsylvania Superior Court previously summarized the relevant facts of this matter as follows:

> The record establishes that on the evening of October 11, 2004, Pittsburgh Police received a call from a 911 dispatcher indicating that a man had been shot at 421 North Homewood Avenue. Police and emergency medical personnel proceeded to that location and found [the victim], a forty-four-year-old male, lying on the sidewalk with an apparent gun shot to his left leg; a spent nine millimeter cartridge was recovered from the scene. [The victim] was transported to Presbyterian Hospital where he was pronounced dead at 12:01 a.m. An autopsy revealed that a nine millimeter bullet entered [the victim's] left thigh and subsequently pierced his femoral artery, causing massive blood loss that resulted in death.
>
> On the morning of October, 14, 2004, homicide detectives received information that Appellant [i.e., Petitioner] was involved in the shooting and that he was residing in an apartment building on Hamilton Street. Four detectives drove to the building at approximately 9:30 a.m. and located Appellant, who agreed to accompany the detectives to their office on the north side of Pittsburgh in order to give a statement. Upon entering the police station, Appellant was directed to an interview room where he was greeted by Detectives Dennis Logan and Jill Smallwood. The detectives informed Appellant that he was a suspect in the murder investigation but clarified that he was not under arrest and could leave if he so desired. Thereafter, they verbally advised Appellant of his constitutional rights, and he signed a form indicating that he understood his rights and agreed to speak to police without a lawyer present. Although he initially denied involvement in the shooting, Appellant subsequently admitted that he and three other males, Nathaniel Smith, Keith Lewis, and Shaquon Jarret, attempted to rob [the victim] at gunpoint on the night in question. When [the victim] grabbed Mr. Smith's revolver, Appellant produced a nine millimeter pistol, pointed it at [the victim], and fired one round that struck [the victim] in the body. Appellant fled on foot and promptly discarded the gun. Appellant stated that he kept the weapon in a "stash place" prior to the robbery and that he usually "carried it on his hip." N.T. Trial, 11/16/06, at 157.
>
> Based on his confession, which was memorialized in handwritten notes that were prepared by Detective Logan and then signed by Appellant, Appellant was charged with criminal homicide and related offenses. His subsequent motion to suppress the confession was denied, and he proceeded to a jury trial where he was convicted of second degree murder, robbery, conspiracy, possession of an instrument of crime, and firearms not to be carried without a license. The trial court imposed a mandatory life sentence on February 12, 2007.

ECF No. 8-4 at 31 – 32 (quoting Commonwealth v. Haynes, 970 A.2d 469 (Pa. Super. 2009) (unpublished memorandum) at 2 - 3).

**B. Procedural History**

**1. State Courts**

The proceedings in state court were summarized by the Pennsylvania Superior Court in its most recent decision. ECF No. 8-5 at 35 – 43.

> Following the exhaustion of his direct appeal, Appellant filed a timely PCRA petition, which the PCRA court denied on July 16, 2010. On appeal to this Court from the July 16, 2010 order, we affirmed in part, and vacated and remanded in part. ***Commonwealth v. Haynes***, 32 A.3d 264 (Pa. Super. 2011) (unpublished memorandum) (***Haynes II***).
>
> Specifically, pertinent to this appeal, Appellant claimed in his PCRA petition that trial counsel was ineffective for failing to seek suppression of certain inculpatory statements made by Appellant on the ground that they were made pursuant to an illegal arrest.[1] ***Id***. slip op. at 5. The PCRA court denied relief on this claim based upon its finding that counsel was not made aware of Appellant's factual assertions regarding his purported arrest until the initial PCRA hearing. ***Id***. at 6. On appeal, the ***Haynes II*** panel noted that the PCRA court's finding was not supported by the record where "[a]lthough Appellant may not have affirmatively told his counsel the version of the events that he now explains, his testimony to those events at the hearing on the motion to suppress his confession should have made his counsel aware of their existence." ***Id***. at 8. Accordingly, we vacated the PCRA court's denial of relief on this claim and remanded with the following instructions.
>
>> On remand, the PCRA court shall consider Appellant's testimony at the suppression hearing within the context of his present claim that trial counsel was ineffective for not bringing a motion to suppress based upon an allegedly unlawful arrest. We continue to defer to the PCRA court for all credibility determinations but instruct that the PCRA court make those determinations with a complete and accurate understanding of the record.

3

*Id*. at 8-9.

---

[1] Trial counsel did pursue suppression of the statements based on a claim that they were not voluntarily made and were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Haynes II*, slip op. at 5, n. 3

Upon remand, the PCRA court conducted an additional hearing on January 20, 2012. On January 27, 2012, the PCRA court once again denied Appellant relief. Appellant filed a timely notice of appeal on February 24, 2012.

ECF No. 8-5 at 35 - 37.

In this decision, the Superior Court affirmed the PCRA court's denial of relief, finding that the PCRA court made credibility determinations which rejected Petitioner's version of the facts and accepted as true the version of the facts testified to by the police officers, which established that Petitioner was not arrested illegally at the apartment but was, in fact, not arrested until after he confessed. The Superior Court concluded that because Petitioner was not, in fact, arrested until after he confessed, his trial counsel could not be ineffective for failing to raise the meritless claim that Petitioner was arrested at the apartment illegally and, as a consequence, the confession had to be suppressed as the fruit of the poisonous tree. Id. at 41 – 43.

Petitioner filed a counseled Petition for Allowance of Appeal to the Pennsylvania Supreme Court which was denied on June 6, 2013. ECF No. 8 at 5.

### 2. Federal Courts

Petitioner initiated the instant federal action by filing a pro se Petition. ECF No. 3. In the Petition, he raised only one ground for relief:

> Trial counsel was ineffective for failing to challenge in his suppression motion or during the suppression hearing, a claim that, 18 yrs old appellant was illegally seized/arrested at his home and forcibly brought to the police station for questioning in a homicide case, and that any statements to police at the station, even after the belated Miranda warnings, must be suppressed because of the

4

> illegal seizure/arrest/forcible transportation to the station, which created a situation in which appellant was unable to withstand suggestion and coercion once the police had him at the station; Appellant[']s will was already broken before he ever set foot in the police station.

ECF No. 3 at 5. Respondents filed an Answer, denying that Petitioner was entitled to any relief. ECF No. 8. Petitioner then filed a Motion for Leave to File a Memorandum of Law in Support of Pending 2254 Habeas Corpus Petition, which was granted in part and denied in part. It was granted insofar as Petitioner sought leave to file a Memorandum of Law in support of his Petition but denied insofar as Petitioner sought the appointment of counsel. ECF No. 15.

Petitioner subsequently filed a Motion to Amend/Correct Petition for Writ of Habeas Corpus, ECF No. 16, and a Brief in Support thereof, ECF No. 17, by which he sought to add three new claims. Those three new claims were:

> (a) The trial court erred, by not suppressing statements made in violation of Miranda after the illegal seizure and arrest of the Petitioner.
> .
> (b) The evidence was insufficient to support convictions for Robbery and Homicide in the Second Degree.
>
> (c) An ineffective assistance of trial and appellate counsel for failing to challenge the sufficiency of the evidence in regard to the Robbery and Homicide conviction.

ECF No. 16 at 2.

This Court granted Petitioner's Motion for Leave to Amend/Correct and ordered that the Petition is considered to be amended and the Court ordered Respondents to file a Supplemental Answer addressing the three new grounds that Petitioner raised in the Motion to Amend/Correct. ECF No. 18. Respondents filed their Supplemental Answer, again denying that Petitioner was entitled to any relief. ECF No. 19.

### C. The AEDPA Applies.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

6

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**D. Discussion**

    **1. Ground One - ineffective assistance of counsel for failure to seek suppression of confession on the ground of illegal arrest.**

In Ground One of the Petition, Petitioner claims his trial counsel was ineffective for failing to seek suppression of his confession on the ground that he was illegally arrested at his home, and as such, his ultimate confession at the police station should have been suppressed for this Fourth Amendment violation because his confession was the fruit of this poisonous tree, notwithstanding that at the police station he was given his Miranda rights.[1]  ECF No. 3 at 5;

---

[1] Insofar as concerns Petitioner's case, there are two possible grounds for suppressing his confession. The first is an alleged Fourth Amendment violation, i.e., he was arrested without probable cause when he was awakened and taken to the police station and but for the illegal arrest, he would never have confessed. This is the so-called fruit of the poisonous tree doctrine, the confession is the fruit of the poisoned arrest. The second possible ground is that his confession was not voluntary or properly mirandized and thus violated his Fifth Amendment right against self-incrimination. The court in United States v. Wade, 956 F. Supp. 2d 638, 654 (W.D. Pa. 2013) *aff'd in part*, 2015 WL 5817723 (3d Cir. Oct. 6, 2015) explained the fruit of the poisonous tree doctrine in relation to Miranda as follows:

> In *Dunaway v. New York*, 442 U.S. 200, 218, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Supreme Court held that a confession given by the defendant, after he was seized without probable cause in violation of the Fourth Amendment and taken to the police station for questioning in an attempt to uproot evidence, was inadmissible where no intervening event broke the connection between his illegal detention and his confession. A violation of Fourth Amendment rights may occur even when the defendant is mirandized following the illegal seizure. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). A confession made following an illegal arrest is subject to the *Wong Sun* "fruit of the poisonous tree" analysis notwithstanding proper adherence to *Miranda* procedures by the police. *Id.* at 602–03, 95 S.Ct. 2254. To be admitted, the statement must be " 'sufficiently an act of free will to purge the primary taint.' " *Id.* at 602, 95 S.Ct. 2254 (quoting *Wong Sun,* 371 U.S. at 486, 83 S.Ct. 407). The *Miranda* warnings are a factor to be taken into consideration when determining whether the

(footnote continued . . . )

ECF No. 16 at 2. Petitioner's trial counsel did file a suppression motion and argued that Petitioner's confession was involuntary in violation of Petitioner's Fifth Amendment rights under Miranda. However, Petitioner argues that his trial counsel should also have sought to have his confession suppressed on the ground that his Fourth Amendment rights to be free from an illegal arrest were violated and that but for the illegal arrest, he would never have confessed.

The PCRA Court held two hearings on the claim of ineffectiveness and rejected this claim. The Pennsylvania Superior Court ultimately agreed that Petitioner failed to meet his burden of proof to show his trial counsel was ineffective for not raising the Fourth Amendment ground for suppression.

In addressing the claim of trial counsel's alleged ineffectiveness raised in Ground One, the Superior Court applied the state court test for ineffective assistance of counsel derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). ECF No. 8-5 at 38. The Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland in the

---

confession was obtained through the exploitation of a Fourth Amendment violation. *Id.* at 603, 95 S.Ct. 2254. The *Miranda* warnings are not the only factor to be considered; rather, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Id.* at 603–04, 95 S.Ct. 2254. The burden of showing admissibility rests on the prosecution.

In Petitioner's case, because there was no illegal seizure/arrest here, as reasonably found by the state courts, and hence, no violation of the Fourth Amendment, there was no poisonous tree from which the confession (i.e., the fruit) was produced. Hence, no suppression of Petitioner's confession was required by the Fourth Amendment. Only if Petitioner could establish the involuntariness of his confession or a violation of Miranda would he have a ground to have his confession suppressed. As explained below, the state courts reasonably found that Petitioner's confession was voluntary and did not violate Miranda.

8

sense of being a wrong rule of law.  Hence, Petitioner cannot show that the Superior Court's disposition of Ground One is contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law.  Nor has Petitioner shown that the Superior Court's disposition is contrary to United States Supreme Court precedent in the second sense, i.e., he fails to point a case decided by the United States Supreme Court where the facts are indistinguishable from his case but where the state court reached an outcome different from the outcome reached by the United States Supreme Court.  Furthermore, Petitioner has failed to show that the state courts' decision was an unreasonable application of Supreme Court precedent.

Because the state courts decided Petitioner's Ground One on the merits, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to United States Supreme Court precedents or an unreasonable application of federal law.  Petitioner fails to establish either requirement for habeas relief.

In Strickland, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91.  In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.").  In light of the foregoing, the United States Court of Appeals for the Third Circuit

has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the Superior Court addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

Premo v. Moore, 562 U.S. 115, 122 - 123 (2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review

under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'").

### a. Ground One does not afford Petitioner relief.

In Ground One, Petitioner contends that his trial counsel was ineffective for failing to raise a claim under the Fourth Amendment that his confession should have been suppressed based on the fruit of the poisonous tree doctrine, in addition to the ground that trial counsel actually did raise in the suppression motion and proceedings.

The Superior Court addressed this issue on the merits. The Superior Court reasoned that although Petitioner testified at the PCRA hearings about what he contended transpired in terms of his being "arrested" by the police at his home, the PCRA court did not credit his testimony and instead credited the testimony of the officers who came to Petitioner's home and requested that he accompany them to the police station where Petitioner eventually confessed. The Superior Court noted:

> . . . the PCRA court made a specific credibility determination, finding Appellant's factual assertions [about what allegedly transpired at his home when the police came there and took him to the police station] to be untrue. Trial Court Opinion, 7/18/12, at 5, 6. Rather the PCRA court found that the version of events reflected in the testimony of the police officers was credible. *Id.* at 3, n.1. Detective James McGee testified at trial that after receiving leads about Appellant's involvement in the subject shooting and where he was staying, they located him asleep in a back bedroom of a residence at around 9:30 a.m. on October 14, 2004. N.T., 11/1/06, at 136-139. The police advised Appellant they were investigating a shooting and asked if he would accompany them to the police station. *Id.* Appellant agreed and was driven to the station and placed in an interview room. *Id.* It is not disputed by the parties that Officer McGee's version of events, if believed, describes a mere encounter for which probable cause is not required.

> As noted, the PCRA court made a credibility determination and rejected Appellant's description of the circumstances surrounding his initial encounter with the police. Trial Court Opinion, 7/18/12, at 5. Concluding Appellant was not in custody, the PCRA court determined that Appellant's underlying suppression claim was without merit. *Id.*
>
>> Ultimately, [the PCRA court] does not believe that [Appellant] was prejudiced as a result of trial counsel's failure to file a suppression motion based on a claim unlawful arrest. Specifically, even assuming that trial counsel should have filed such a motion, [the trial court] would ultimately have been confronted with a record infected with [Appellant's] self-serving, incredible testimony.
>
> *Id.* at 5-6. Therefore, having failed to establish the prejudice prong of the above-cited test to prove ineffective assistance of counsel, the PCRA court concluded Appellant did not meet his burden for PCRA relief.

ECF No. 8-5 at 41 - 42 (footnote and citations omitted).

Essentially, the state courts concluded that there was no arrest or Fourth Amendment seizure of Petitioner prior to him confessing and, hence, no violation of Petitioner's Fourth Amendment rights, given that they discredited Petitioner's version of the facts and credited the police officers' version of the facts. Since there was no Fourth Amendment violation, Petitioner's trial counsel could not have been ineffective for failing to raise a meritless claim under the Fourth Amendment. We find this to be an eminently reasonable disposition of Ground One. Werts, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim."). Nothing in Petitioner's arguments persuade this Court otherwise. Accordingly, Ground One does not merit relief.

### 2. Trial and appellate counsel were not ineffective for failing to challenge sufficiency of the evidence for robbery and homicide.

We will next address two of Petitioner's claims together as they are related. First, Petitioner's second ineffectiveness claim is that his counsel were ineffective for failing to contend that the evidence was insufficient to convict him of robbery, and consequently, also,

insufficient to convict him of second degree murder.  Relatedly, Petitioner also contends that, in fact, the evidence was insufficient to convict him of robbery and second degree murder.

Petitioner claims that his trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence in regard to his robbery and homicide convictions.  The Superior Court again applied the Pierce standard to this claim, see, ECF No. 8-4 at 34, and Petitioner has not shown that this standard is contrary to United State Supreme Court precedent in either of the two senses. Nor does he even explicitly argue in either the Motion to Amend or in its Addendum that the state courts' disposition of this claim was unreasonable.  Nor do we find it to be such.

The Superior Court reasoned that robbery under state law is established if in the course of committing a theft, the perpetrator inflicts serious bodily injury upon another.  Id. at 41.   The Court went on to note that Petitioner's confession established all of the necessary elements. Specifically, the Superior Court noted that Petitioner:

> confessed [that] on the night in question, he and three other males (one of which was Mr. Smith) agreed to rob the victim at gunpoint.  Furthermore, Appellant admitted that he fired a nine millimeter pistol and fatally wounded the victim when, during the course of the robbery attempt, the victim grabbed Mr. Smith's revolver.
> Consequently, based upon this evidence, the record was more than sufficient to establish Appellant's guilt of inflicting serious bodily injury upon the victim in the course of attempting to commit a theft. ***See*** 18 Pa.C.S.A. § 3701(a)(1)(i).  As a result any appeal of Appellant's robbery conviction based upon sufficiency of the evidence would have lacked merit. . . . ***See Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa. Super. 2004) (counsel cannot be ineffective for failure to raise a claim lacking merit).

ECF No. 8-4 at 42.  Petitioner fails to show how this is an unreasonable disposition of his ineffectiveness claims.  Nor do we find it to be such.  Werts, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").

13

Petitioner also fails to show that the Superior Court's finding the evidence to be sufficient to convict him of robbery and second degree murder was contrary to or an unreasonable application of United States Supreme Court precedent. See Superior Court slip op., ECF No. 8-2 at 36 ("Appellant gave a detailed, voluntary confession wherein he admitted that he shot the victim with a nine millimeter handgun that he possessed during an armed robbery on a public street. A criminal homicide committed during the perpetration of a felony such as robbery constitutes second degree murder."). We find that the Superior Court's disposition of these claims of insufficiency to be an eminently reasonable application of United States Supreme Court precedent.

Accordingly, neither Petitioner's claim that the evidence was insufficient or the claim that his counsel were ineffective for failing to raise a challenge to the sufficiency of the evidence merits relief.

### 3. The trial court did not err in finding the confession voluntary.

Petitioner also argues that the trial court erred in failing to suppress his confession because his confession was in fact involuntary under the Fifth Amendment.

The trial court conducted a suppression hearing, where evidence was presented as to what occurred and the trial court ultimately found that at the "time the interview was conducted, Mr. Von Haynes was not under arrest and specifically advised that he was free to leave" and that the police gave Petitioner his Miranda rights and Petitioner understood his rights and still wished to answer questions. ECF No. 8-1 at 30. The trial court also found that "Detective Logan made handwritten notes during the interview. Mr. Von Haynes reviewed those notes and made some corrections. Mr. Von Haynes also affixed his signature seven times to Detective Logan's notes." Id.

However, Petitioner testified that he did not know the contents of the rights form before he signed the form, and that Detective Logan never advised Petitioner that he had the right to counsel or the right to refuse questioning or that Detective Logan ever advised Petitioner of his Miranda rights. Id. at 31. Petitioner did admit to reading Detective Logan's notes and affixing his signature to those notes and initializing those notes. Id.

The Superior Court addressed this issue on the merits. It found:

> When deciding a motion to suppress a confession, the touchstone of the inquiry is whether the confession is voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. . . .

***Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998) (footnote and internal citations omitted). In assessing the voluntariness of a confession, courts should consider the duration and method of interrogation, the physical and psychological state of the accused, the conditions attendant to the detention, the demeanor of the interrogator, and any other factors that could affect a person's ability to withstand suggestion and coercion. ***Id.***

> In the case at bar, Detective Logan testified that upon meeting Appellant at police headquarters, he introduced himself and Detective Smallwood, and painstakingly explained that Appellant was **not** under arrest at that time. ***See*** N.T. Suppression, 11/11/06 at 7-8. This occurred at 11:11 a.m. ***Id***. at 24. Although informed that he was free to leave the premises, Appellant chose to stay and discuss the shooting with the detectives. Thus, Detective Logan issued verbal ***Miranda*** warnings, which included an explanation of the right to have an attorney present during questioning, and then gave Appellant an opportunity to examine a written version of the warnings, which Appellant signed in the detective's presence. Appellant never asked for additional information or indicated that he did not comprehend his rights; rather, he stated that he understood his constitutional rights and that he was willing to answer questions without a lawyer present. ***Id.*** at 13. Satisfied that Appellant was being honest, the unarmed detectives proceeded to question Appellant in a normal tone of voice. At 11:47 a.m., Appellant admitted involvement in the robbery and was immediately informed that he was under arrest for robbery and homicide; however, he continued to make inculpatory statements after being told that he was no longer free to leave. ***Id.*** 26-27. At the conclusion of the interview, Appellant read, signed and initialed Detective Logan's handwritten notes memorializing the salient details of the confession.

ECF No. 8-2 at 31 – 33.

Even though Petitioner testified at the suppression hearing to a completely different set of facts that allegedly occurred which was contrary to the police version of the facts, the Superior Court noted that the trial court did not credit Petitioner's contrary version of the facts but credited Detective Logan's version of the facts recounted above. ECF No. 8-2 at 33. The Superior Court then reviewed the totality of the circumstances as revealed by Detective Logan's testimony which the trial court credited and reasoned that:

> there was no objective evidence of coercive police tactics or lack of sophistication on Appellant's part to a degree that rendered him unable to comprehend the *Miranda* warnings that were provided to him both orally and in writing. Appellant gave the confession sixteen days before his nineteenth birthday and told police that he had completed three years of high school. *See* N.T. Suppression, 11/11/06, at 11. He also told detectives that he could read, write and understand the English language prior to reading and signing the *Miranda* warnings that were provided for his review. *Id.* at 31. Considering the totality of the circumstances, we see no reason to disturb the trial court's determination that the confession was voluntary.

Id. at 34, 36.[2]

Petitioner fails to argue yet alone establish that the Superior Court's disposition of this claim constitutes an unreasonable application of United States Supreme Court precedent. Nor do we find it to be such. See, e.g., Fahy v. Horn, 516 F.3d 169, 194 (3d Cir. 2008) ("The ultimate question in the voluntariness calculus is 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'") (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)). What the Court of Appeals stated in Reardon v. Hendricks, 82 F. App'x 273, 276 (3d Cir. 2003) applies equally here:

> [i]n the present case, it is clear that the state courts applied this standard [of voluntariness under the totality of the circumstances]. Moreover, Reardon has

---

[2] The pages of the Superior Court opinion, as attached to Respondents' Answer, are photocopied out of order such that, as originally paginated, the pages are submitted as 7, 9, 8, which correspond to the ECF Numbers paginated as 34, 35 and 36, respectively.

> not cited, and our research has not disclosed, any Supreme Court decision holding on materially indistinguishable facts that a confession was involuntary. Accordingly, the adjudication of Reardon's claim in the state courts is not "contrary to" Supreme Court precedent.
> 
> The state courts' application of the voluntariness standard to the facts of this particular case was also reasonable. The state courts' analysis was thorough and attentive to the relevant evidence and the factors bearing on voluntariness.

Reardon v. Hendricks, 82 F. App'x 273, 276 (3d Cir. 2003). Accordingly, this claim does not merit relief in these federal habeas proceedings.

To the extent that Petitioner argues any of the state court factual findings constitute an unreasonable finding of fact, we find Petitioner has not carried his burden to establish such a contention and we conclude that the state courts' factual determinations are adequately supported by the record.

### E. Certificate of Appealability

Because we conclude that jurists of reason would not find the foregoing to be debatable, we recommend that a Certificate of Appealability be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition be dismissed and that a Certificate of Appealabity be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right

to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Date: April 25, 2016  Respectfully submitted:

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Joy Flowers Conti
Chief United States District Judge

Gerard Von Haynes
GY-8752
SCI Graterford
Box 244
Graterford, PA 19426-0426

All Counsel of Record Via CM-ECF